**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Alexis Monge,

Plaintiff,

v.

Everwell Home Health Care LLC, et al.,

Defendants.

No. CV-24-03007-PHX-KML

**ORDER**

This case concerns Alexis Monge's brief period of work providing in-home caregiving services for Everwell Home Health Care LLC. Monge alleges Everwell and its owner, Shanea Howell, failed to pay her minimum wage for that work in violation of federal and Arizona law. Monge and Howell filed competing motions for summary judgment, while Everwell remains in default. The record establishes Monge was Howell's employee, performed 38 hours of compensable work, and received no wages. Monge's motion is granted and Howell's motion is denied.

## I. Background

Everwell provides nonmedical in-home care, including assistance with bathing, cooking, and cleaning. (Doc. 69-3 at 5.) Howell owns Everwell. (Doc. 69-3 at 3.) She personally trained caregivers and provided care for Everwell's members (*i.e.*, clients). (Doc. 69-3 at 4–6.) Members informed Everwell of the services, days, and hours they needed care; Everwell decided whether it could provide the requested care and then paired caregivers with members. (Doc. 69-3 at 6–8.) Members paid Everwell, and Everwell

separately agreed with caregivers on their compensation. (Doc. 69-3 at 14–16.) Howell personally determined whether Everwell would accept a caregiver's requested rate. (Doc. 69-3 at 16.) Caregivers were not required to bring clients or other business to Everwell; Everwell supplied the members for whom they provided care. (Doc. 69-3 at 16–17.) Members generally supplied the household materials used to provide care, while Everwell required caregivers to possess CPR and first-aid certifications. (Doc. 69-3 at 20–21.)

In August 2024, Monge applied to provide caregiving services for Everwell and Howell decided to hire her. (Doc. 69-3 at 6–10.) On August 12, 2024, Everwell told Monge in an onboarding email that she would be compensated as a "1099 Independent Contractor." (Doc. 71 at 3.) The email attached an independent-contractor notification and W-9 form and instructed Monge to review and sign the documents. (Doc. 71 at 3, 7.) Monge replied that she had received the information, looked forward to working for Everwell, and planned to meet Howell on August 14. (Doc. 71 at 3.) She also asked Howell to send the addresses and names of the clients she would see. (Doc. 71 at 3.) The record contains no agreement signed by Monge, and Howell claims she never submitted the forms. (Doc. 71 at 1.) Howell later testified she classified Monge as an independent contractor because Everwell classified all its caregivers as contractors rather than employees during their first 30 days on the job. (Docs. 69-3 at 19–20; 59-4 at 2.)

On Tuesday, August 13, Howell told Monge she was setting up Monge's employee profile in the AxisCare Mobile application. (Doc. 69-2 at 9.) Howell instructed Monge to download the application and create an account before her "next shift." (Doc. 69-2 at 9.) She explained the application would display Monge's schedule, including the time and location of each member visit. (Doc. 69-2 at 9–10.) Monge responded that she made an account and asked questions about her shifts for the week. (Doc. 69-2 at 9–10.) Howell responded that AxisCare Mobile would have Monge's schedule details, the "3rd client will start on Friday," and she would add it to Monge's schedule on AxisCare. (Doc. 69-2 at 10.)

On August 14, Howell and Monge agreed to meet at 8:30 a.m. (Doc. 69-2 at 11.) Monge also told Howell she was confused because she "didn't see the 3rd client on [her]

schedule and it's not 40 hours?" (Doc. 69-2 at 11.) Howell said the AxisCare app would contain schedule details and once again provided the address and hours for the third client that Monge would take on later that week. (Doc. 69-2 at 12.) Monge responded, "Ok . . . That's fine as long as I can get the 40 [hours] we talked about." (Doc. 69-2 at 13.) That same day, Howell sent Monge $20 for gasoline via Apple Cash (which the parties regularly refer to as "Apple Pay"). (Doc. 69-2 at 14.)

Over the next week, Howell continued directing the details of Monge's day-to-day work, including the other caregivers with whom she would work, the members she would visit, the timing and scheduling of those visits, and how Monge should document her work in AxisCare. (*See, e.g.*, Docs. 69-2 at 15 (adjusting Monge's schedule and directing her to work specified days with "topaz," who appears to be another caregiver); 69-2 at 16–17 (instructing Monge how to record and document a member visit); 69-2 at 17 (Howell stating she would rearrange the following week's schedule); 69-2 at 18 (communicating with Monge about care provided to one member and Monge's travel to another member's home).)

On August 20, Howell addressed Monge's continued assignments and rate of pay. She told Monge her rate was $19 per hour for a route involving three members. (Doc. 69-2 at 19.) Howell explained that if Monge could not continue caring for one member, Howell might have to "let [Monge] go," give away Monge's entire schedule, or reduce her rate of pay.[1] (Doc. 69-2 at 19–20.) After Monge said she could not accept less than the rate at which she was hired, Howell stated the adjusted rate would be $18 per hour because the additional dollar had been offered based on travel to the aforementioned member. (Doc.

[1] Howell testified she personally determined caregivers' rates of pay, assigned or reassigned caregivers to members, and had authority to end a caregiver's relationship with Everwell. (Doc. 69-3 at 16–19.) Howell nevertheless states in a declaration filed with her response that Monge was free to accept or decline assignments, controlled her availability, was not required to work minimum hours, and could work elsewhere. (Doc. 71 at 1.) Those generalized assertions do not create a genuine dispute regarding the economic realities of the relationship. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). And to the extent Howell's later declaration conflicts with her deposition testimony, she cannot create a genuine dispute by contradicting her prior sworn testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

69-2 at 20–22.) The two continued discussing possible scheduling changes; Monge contemplated five hours of work each day from Monday through Friday to which Howell reacted with a "thumbs up" emoji. (Doc. 69-2 at 22–23.) On August 21, Monge reported difficulty clocking in and out through AxisCare and asked Howell to record a 3:20 p.m. departure. (Doc. 69-2 at 23.) Monge declares she ultimately worked 38 hours from approximately August 14 through August 22. (Doc. 69-2 at 2–3.)

On August 23, Monge asked when Howell would send payment for her first 16 hours of work and an additional $50 for cleaning a bathroom, and said all records concerning her work were saved in AxisCare. (Doc. 69-2 at 24.) Howell read the message but did not respond. (Doc. 59-2 at 10.) On August 24, Monge requested $354 through Apple Cash, and Howell once again did not respond. (Doc. 69-2 at 24.)

On September 6, Monge requested $720 from Howell and identified the request as payment for 38 hours of work. (Doc. 69-2 at 24–25.) Howell responded that Everwell had emailed Monge requesting a mailing address so it could mail her last paycheck, but the email had been returned as undeliverable. (Docs. 69-2 at 25; 71 at 6.) Monge replied that Everwell already had her address but provided it again and requested payment for 38 hours at $19 per hour. (Doc. 69-2 at 25–28.) Monge followed up on September 11 and September 16 (when she again confirmed her mailing address), stating she had not received a check. (Docs. 69-2 at 28; 59-2 at 13.)

Howell now claims Monge participated in approximately three days of shadowing, performed no independent or billable care, and never completed onboarding. (Docs. 53 at 5; 71 at 1–2.) She testified caregivers generally were required to complete at least seven days of shadowing, throughout which a prospective caregiver would accompany Howell to the homes of members whose schedules the caregiver had agreed to work. (Doc. 69-3 at 11–13.) Howell maintains Monge never completed this process. (Doc. 71 at 1–2.) The record does not reflect this alleged shadowing process and in fact appears to contradict it, clearly reflecting days when Howell and Monge were not working together. (*See* Doc. 69-2 at 18 (Howell asking how Monge's day was going and Monge responding with details

about a member's medical emergency before stating she was heading to another member's home).)

No AxisCare or other timekeeping records appear in the summary-judgment record. During her deposition, Howell could not recall how many hours Monge spent with Everwell and testified she knew of no records or documents reflecting that information and the only remaining source was her memory. (Doc. 69-3 at 25–26.) Howell estimated then that Monge might have shadowed for three to five days. (Doc. 69-3 at 25.)

Despite claiming to have no idea how many hours Monge worked, Howell has acknowledged a specific amount due to Monge. During her deposition, Howell initially characterized $682 as a courtesy she had offered because Monge had reported financial difficulties. (Doc. 69-3 at 27.) Howell could not remember how she calculated that amount, but when asked directly whether $682 represented the wages owed to Monge, Howell eventually answered yes. (Doc. 69-3 at 27.) Earlier in the case, Howell had likewise described approximately $682 as the "undisputed base wages." (Doc. 49 at 2.)

Monge filed this action against Everwell, Howell, and Howell's spouse (named as John Doe)[2], asserting minimum-wage claims under the Fair Labor Standards Act ("FLSA") and Arizona Minimum Wage Act ("AMWA") and a wage-payment claim against Everwell under the Arizona Wage Act ("AWA"). (Doc. 1.) Both Everwell and Howell initially defaulted. The court set aside Howell's default, but Everwell remained in default because a limited liability company may appear only through counsel. (Doc. 52 at 1.) The court later denied without prejudice Monge's motion for default judgment against Everwell because Howell's defenses might also apply to Everwell and could produce inconsistent judgments. (Doc. 52 at 2–3.) Howell and Monge now both move for summary judgment. (Docs. 53; 69.)

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine

[2] Monge filed proof of service on "John Doe Howell" that indicated Howell had been served on John Doe's behalf. (Doc. 8.) Monge never submitted evidence that Howell is married. If Howell is married, Monge should have sought to substitute the spouse's true name. Defendant John Doe is dismissed.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Analysis

Monge asserts minimum-wage claims against Howell under the FLSA and AMWA. Both claims require determining whether Monge was an employee, whether Howell was her employer, whether the applicable statute covered Monge's work, and whether Howell failed to pay Monge for compensable time. Monge's AWA claim is asserted against Everwell alone and is not resolved by the competing motions.

### A. Employment Relationship

Howell first argues Monge was not an employee because Monge agreed to work as an independent contractor and never completed Everwell's onboarding paperwork. To effectuate the broader remedial purposes of the FLSA, courts have adopted expansive definitions of "employer" and "employee" under the Act. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Whether a worker is an employee or independent contractor turns on a number of nonexclusive factors including (1) the alleged employer's right to control how the work is performed; (2) the worker's opportunity for

profit or loss based on managerial skill; (3) the worker's investment in equipment or employment of helpers; (4) the skill required; (5) the permanence of the relationship; and (6) whether the work is integral to the alleged employer's business. *Id.* The economic realities of the total circumstances control the analysis, rather than contractual labels. *Id.* at 755–56. The AMWA applies the same FLSA standards but places the burden on the person for whom the work is performed to establish independent-contractor status by clear and convincing evidence. A.R.S. § 23-362(D); *see McGarr v. Repossession Servs. of Ariz. LLC*, No. CV-21-02022-PHX-GMS, 2023 WL 6795082, at *5 (D. Ariz. Oct. 13, 2023) ("AMWA and FLSA employee status is functionally the same.").

The economic realities of the circumstances demonstrate Monge was an employee. The record demonstrates Howell exercised substantial control over Monge's work: she selected the members Monge would visit, determined the time and location of those visits, set and adjusted Monge's schedule, established her hourly rate, and directed how she would document her work. Howell also warned Monge that declining one member might result in the loss of her schedule or a reduction in her hourly rate. Monge's compensation was set by the hour, and she had no opportunity for profit or risk of loss based on decisions she could control. Monge's work required only basic CPR and first-aid certifications—not specialized professional training—and she made no capital investments and employed no helpers. And although the relationship between the parties ended after approximately one week, they clearly contemplated ongoing, full-time work. Most significantly, Monge provided the caregiving services Everwell existed to sell. She was economically dependent on Everwell, not in business for herself. *See Hollis v. R&R Restaurants, Inc.*, 159 F.4th 677, 687 (9th Cir. 2025); *Real*, 603 F.2d at 754. Howell's unsupported assertions that Monge could decline assignments, control her availability, and work elsewhere do not outweigh the remaining factors or establish Monge exercised managerial skill or operated an independent business. Therefore, Monge was an employee.

The remaining question is whether Howell herself was one of Monge's employers. The FLSA defines an employer as a person "acting directly or indirectly in the interest of

an employer in relation to an employee." 29 U.S.C. § 203(d). Arizona's definition similarly includes an individual acting directly or indirectly in an employer's interest. A.R.S. § 23-362(B). An individual who exercises control over the nature and structure of the employment relationship, or economic control over that relationship, is personally an employer under the FLSA. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). Relevant considerations include whether the individual had power to hire and fire employees, supervised or controlled work schedules and employment conditions, determined the rate and method of payment, and maintained employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

Howell easily satisfies that standard. She did not merely own Everwell. She personally decided to hire Monge, trained her, assigned her to members, controlled her schedule, set and adjusted her hourly rate, and possessed authority to end the relationship. Howell exercised direct economic and operational control over every material aspect of Monge's work. She was therefore Monge's employer under the FLSA and AMWA. *See id.*

**B. Minimum-Wage Liability**

The next relevant questions are whether Monge's work was covered by the FLSA and AMWA, whether the activities she performed were compensable, and whether Howell failed to pay the required minimum wage for that work.

The FLSA extends minimum-wage protection to employees performing domestic service. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007). An employee who performs domestic service in one or more households for more than eight aggregate hours in any workweek must be paid the applicable federal minimum wage. 29 U.S.C. § 206(f)(2); 29 C.F.R. §§ 552.2(b)(2), 552.100(a)(1). "Domestic service employment" expressly includes work performed by caretakers, home-health aides, and personal-care aides. 29 C.F.R. § 552.3.

Employees covered under § 206(f)(2) must receive at least the applicable federal minimum wage for their domestic-service work. *See also* 29 U.S.C. § 206(a). The AMWA similarly requires employers to pay employees at least the applicable Arizona minimum

wage. A.R.S. § 23-363(A). Time spent in training or similar activities is noncompensable only if attendance occurs outside regular working hours, is voluntary, is unrelated to the employee's job, and involves no productive work. 29 C.F.R. § 785.27. Attendance is not voluntary when the employer requires it. 29 C.F.R. § 785.28. Whether established activities constitute compensable work is a question of law. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

In seeking unpaid wages, an employee initially must prove she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). Employers of covered domestic-service employees must maintain records of the hours each employee worked, even if they require the employee to independently record and submit those hours. 29 C.F.R. § 552.110(a), (d). Arizona law similarly requires employers to maintain payroll records showing the hours worked each day, with failure to do so raising a rebuttable presumption that the employer did not pay the required minimum wage. A.R.S. § 23-364(D). When an employer's records are absent or inadequate, the employee satisfies her burden by producing sufficient evidence of the amount and extent of her work as a matter of just and reasonable inference. *Mt. Clemens*, 328 U.S. at 687. The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence negating the reasonableness of the employee's inference. *Id.* at 687–88; *Brock v. Seto*, 790 F.2d 1446, 1448–49 (9th Cir. 1986). Uncertainty resulting from the employer's failure to maintain the required records does not bar an approximate award. *Brock*, 790 F.2d at 1448.

First, Monge was covered under the FLSA as a domestic-service employee. She provided services of a household nature in Everwell members' private homes, including purchasing food, cleaning, assisting with showering, and providing other personal care. (Doc. 69-2 at 16, 18.) Those activities fall squarely within the work performed by caretakers, home-health aides, and personal-care aides identified in 29 C.F.R. § 552.3. Monge worked 38 hours during the nine-day period from August 14 through August 22 and therefore necessarily performed more than eight hours of domestic service during at

least one workweek. Howell's bare assertion that coverage is disputed identifies no evidence or legal basis for concluding otherwise. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). Monge was covered by the FLSA.

Next, Howell argues Monge was "shadowing during incomplete onboarding" and therefore performed no compensable work. (Doc. 70 at 2.) Despite what Howell argues, neither incomplete onboarding nor describing Monge's work as "shadowing" makes the time noncompensable. Whether Monge completed Everwell's onboarding process does not determine whether an employment relationship existed; the economic realities of the relationship control, not contractual labels or formalities. *See Real*, 603 F.2d at 755–56. For the reasons already explained, those realities establish Monge was an employee.

Howell's characterization of Monge's activities as shadowing[3] similarly does not make the time noncompensable. Training time may be excluded only if attendance occurs outside the employee's regular working hours, is voluntary, is unrelated to the employee's job, and involves no productive work. 29 C.F.R. § 785.27. All four requirements must be met. *Id.* Howell testified Everwell *required* caregivers to complete at least seven days of shadowing, so it was not voluntary. *See* 29 C.F.R. § 785.28. Because it occurred during visits to Everwell's members and was intended to teach Monge how to perform the caregiving job for which she had been hired, it was directly related to her work. *See* 29 C.F.R. § 785.29. Failure to satisfy either condition is enough to make the time compensable.

To the extent Howell labels Monge as a "trainee" to suggest her shadowing was noncompensable (Doc. 53 at 1), that argument also fails. A trainee may not qualify as an employee when the training is primarily for her own benefit, she displaces no regular employees, the employer derives no immediate advantage from her activities, and the parties understand she will receive no compensation. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 149–53 (1947). By contrast, trainees may qualify as employees when

---

[3] Describing all Monge's work as "shadowing" appears inaccurate given that Monge performed at least some caregiving work without Howell present.

they perform the employer's ordinary work, provide an immediate benefit to its business, and receive instruction directed principally toward the employer's particular operations. *See McLaughlin v. Ensley*, 877 F.2d 1207, 1209–10 (4th Cir. 1989). In performing Everwell's ordinary services and thereby providing it an immediate benefit—activities not undertaken solely for Monge's benefit—the time she spent performing those activities was compensable. *See id.*

Lastly, Monge has met her burden of establishing the amount and extent of her uncompensated work as a matter of just and reasonable inference. *See Mt. Clemens*, 328 U.S. at 686–87. She declares she worked 38 hours, and her contemporaneous messages (which Howell did not refute at the time) show she initially requested payment for 16 hours and later requested payment for 38 hours. The messages also document scheduled visits, work performed for Everwell's members, and Monge's efforts to record her time through AxisCare. Howell, who controlled AxisCare and bore responsibility for maintaining accurate time records, produced no records showing different hours, testified she could not recall Monge's precise schedule, and offered no alternative time calculation. *See Brock*, 790 F.2d at 1448–49; *see also* 29 C.F.R. § 552.110(a); A.R.S. § 23-364(D). Her generalized assertion that Monge participated in approximately three days of shadowing does not negate the reasonableness of Monge's evidence, particularly given Howell's previous admissions that $682 in wages was owed. Monge has therefore established she performed 38 hours of compensable work and received no wages for that work.

**C. Damages**

The remaining issue is the amount Monge may recover from Howell for the 38 hours of unpaid work. An employer who violates the FLSA is liable for the unpaid minimum wages and an equal amount as liquidated damages. 29 U.S.C. § 216(b). Unless the employer proves she acted in subjective good faith and had objectively reasonable grounds for believing her conduct complied with the FLSA, liquidated damages are mandatory. 29 U.S.C. § 260; *Flores v. City of San Gabriel*, 824 F.3d 890, 904–05 (9th Cir. 2016). The AMWA requires an employer who fails to pay the applicable minimum wage to pay the

balance owed, interest, and an additional amount equal to twice the underpayment. A.R.S. § 23-364(G). Trebled damages are mandatory under the AMWA. *Salgado v. Synergy Payment Sols. Inc.*, No. CV-24-00523-PHX-DWL, 2024 WL 4492467, at *3 (D. Ariz. Oct. 15, 2024). Damages need not be calculated with exact precision when the employer failed to maintain adequate records; a reasonable approximation is sufficient. *See Mt. Clemens*, 328 U.S. at 687–88; *Brock*, 790 F.2d at 1448; *see also Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *6 (D. Ariz. Dec. 2, 2019) (calculating AMWA damages using estimated weekly hours).

When the same unpaid work violates both statutes, the larger AMWA recovery encompasses the FLSA recovery. *See Salgado*, 2024 WL 4492467, at *3. The AMWA provides the larger recovery here.[4] Arizona adjusts its minimum wage annually, and damages are calculated using the rate in effect when the work was performed. *See Tolano*, 2019 WL 6464748, at *6 (approving calculations applying, for each relevant workweek, "the minimum wage at that time"). Arizona's minimum wage in 2024 was $14.35 per hour. *Salgado*, 2024 WL 4492467, at *3.

Monge's 38 hours of work at Arizona's $14.35 minimum wage equals $545.30 in unpaid wages. Her $545.30 in unpaid minimum wages must be trebled under A.R.S. § 23-364(G), resulting in an award of $1,635.90. Howell's reliance on good faith and A.R.S. § 23-355 does not reduce that award. (Doc. 53 at 1.) Section 23-355 does not apply to Monge's AMWA claim against Howell, which is governed by the mandatory remedy in § 23-364(G). Because the $1,635.90 AMWA award encompasses the smaller FLSA award, the court need not decide whether Howell established good faith under 29 U.S.C. § 260. *See Barrons v. Smallwood*, No. CV-23-02705-PHX-DWL, 2024 WL 5056412, at *2 (D. Ariz. Dec. 10, 2024) ("Courts in the District of Arizona routinely conclude that plaintiffs bringing AWA, AMWA, and FLSA claims are entitled only to the maximum amount of damages under either the state or federal statutes.") (simplified); *see*

[4] The federal minimum wage has been $7.25 per hour since 2009. 29 U.S.C. § 206(a)(1)(C). Even assuming Monge could recover under the FLSA for all 38 hours, her unpaid federal minimum wages would be $275.50. Including an equal amount of liquidated damages, Monge's total FLSA recovery would be $551.

*also Guerrero v. Danny's Furniture Inc.*, No. 19-CV-7284 (LJL), 2021 WL 4155124, at *3 (S.D.N.Y. Sept. 13, 2021) (focusing damages analysis on state law because state law provided the greater minimum-wage recovery). Monge is therefore entitled to a total of $1,635.90 against Howell, plus applicable interest. Monge is also entitled to reasonable attorneys' fees and costs, to be determined after entry of judgment. 29 U.S.C. § 216(b); A.R.S. § 23-364(G).

**D. Everwell**

Monge's FLSA and AMWA claims remain pending against Everwell, and she asserts an AWA claim against Everwell alone. Everwell remains in default and is not represented by counsel. The court previously denied Monge's motion for default judgment without prejudice because Howell's defenses might also apply to Everwell and could produce inconsistent judgments. (Doc. 52 at 2–3.) Those common defenses have now been resolved. Monge therefore may renew her motion for default judgment against Everwell.

Accordingly,

**IT IS ORDERED** Monge's motion for summary judgment (Doc. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** Howell's motion for summary judgment (Doc. 53) is **DENIED**.

**IT IS FURTHER ORDERED** no later than **September 1, 2026**, Monge shall file a motion for default judgment regarding Everwell.

Dated this 19th day of August, 2026.

Krissa M. Lanham

**Honorable Krissa M. Lanham**
**United States District Judge**